FILED - GR
March 26, 2009 3:38 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: _ald___/_____

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Shelly Brady**, | ) |
| Plaintiff, | ) ) ) Hon. |
| v. | ) ) |
| **NCO Financial Systems, Inc.**, a Pennsylvania corporation, | ) ) ) |
| Defendant. | ) ) ) |

**1:09-cv-293**
Paul L Maloney
Chief U.S. District Judge

**Complaint**

**I.      Introduction**

1.     This is an action for damages and declaratory relief, brought against a debt collector in response to the debt collector's abusive, deceptive and/or unfair debt collection practices which violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Collection Practices Act ("MCPA"), M.C.L. § 339.901 *et seq.*

**II.      Jurisdiction**

2.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue in this judicial district is proper because the pertinent events took place here.

**III.      Parties**

3.     Plaintiff Shelly Brady is a natural person residing in Ottawa County, Michigan. Ms. Brady is a "person" as the term is defined and/or used in the FDCPA and MCPA.

1

4. Defendant NCO Financial Systems, Inc. ("NCO") is a Pennsylvania corporation doing business at 507 Prudential Road, Horsham, Pennsylvania 19044. NCO is qualified to do business in Michigan. The registered agent for NCO is The Corporation Company, 30600 Telegraph Road, Bingham Farms, Michigan 48025. NCO is a "debt collector" as the term is defined and/or used in the FDCPA. NCO is a "collection agency," "licensee" and "person" as the terms are defined and/or used in the MCPA. NCO is a "person" as the term is defined and/or used in the TCPA.

## IV. Facts

5. On or about March 4, 2009 at approximately 10:15 a.m., a NCO employee telephoned Ms. Brady at her residence and asked to speak with a person named Susie Peck. Ms. Brady stated that Susie Peck did not live there. Ms. Brady told the NCO employee not to telephone her again.

6. On or about March 5, 2009 at approximately 9:11 a.m., a NCO employee telephoned Ms. Brady at her residence and asked to speak with a person named Susie Peck. Ms. Brady stated that Susie Peck did not live there. Ms. Brady stated that her name was Shelly Brady. Ms. Brady told the NCO employee not to telephone her again. The NCO employee responded by saying, "Ok Susie, but we will keep calling."

7. On or about March 5, 2009 at approximately 9:15 a.m., Ms. Brady telephoned NCO and spoke with a NCO employee. Ms. Brady stated that she was receiving calls from NCO. Ms. Brady stated that she was not Susie Peck. Ms. Brady stated that NCO was to stop telephoning her. Ms. Brady stated that if NCO continued to telephone her, she would contact a lawyer. The NCO employee responded that the telephone call was being recorded. The NCO

employee stated that she would note that Susie Peck did not live at the number NCO was telephoning and that the telephone calls to Ms. Brady would stop.

8. On or about March 6, 2009 at approximately 8:16 a.m., a NCO employee telephoned Ms. Brady at her residence and asked to speak with a person named Susie Peck. Ms. Brady stated that Susie Peck did not live there. The NCO employee responded by saying, "Ok Susie" and terminated the call.

9. On or about March 7, 2009 at approximately 9:29 a.m., a NCO employee telephoned Ms. Brady at her residence and asked to speak with a person named Susie Peck. Ms. Brady stated that Susie Peck did not live there and Ms. Brady terminated the call.

10. On or about March 8, 2009 at approximately 1:32 p.m., NCO telephoned Ms. Brady at her residence. Ms. Brady from her caller ID that the call was from NCO. Ms. Brady did not answer the call.

11. On or about March 8, 2009 at approximately 2:56 p.m., a NCO employee telephoned Ms. Brady at her residence and asked to speak with a person named Susie Peck. Ms. Brady stated that Susie Peck did not live there. The NCO employee responded by saying, "Ok Susie" and terminated the call.

12. On or about March 8, 2009 at approximately 3:00 p.m., Ms. Brady telephoned NCO and spoke with a NCO employee. Ms. Brady stated that she was receiving calls from NCO. Ms. Brady stated that she was not Susie Peck. Ms. Brady stated that NCO was to stop telephoning her. Ms. Brady stated that if NCO continued to telephone her, she would contact an attorney. The NCO employee apologized and said that it takes time to remove a telephone number from NCO's system. The NCO employee told Ms. Brady she should not be upset

because the NCO employees were just doing their job. The NCO employee stated that the telephone call was being recorded.

13.     On or about March 8, 2009 at approximately 5:55 p.m., a NCO employee telephoned Ms. Brady at her residence and asked to speak with a person named Susie Peck. Ms. Brady stated that Susie Peck did not live there and Ms. Brady terminated the call.

14.     On or about March 8, 2009 at approximately 7:29 p.m., a NCO employee telephoned Ms. Brady at her residence and asked to speak with a person named Susie Peck. Ms. Brady stated that Susie Peck did not live there and Ms. Brady terminated the call.

15.     On or about March 8, 2009 at approximately 8:37 p.m., a NCO employee telephoned Ms. Brady at her residence and asked to speak with a person named Susie Peck. Ms. Brady stated that Susie Peck did not live there. Ms. Brady complained that NCO had called her five times that day. Ms. Brady stated that she intended to contact a lawyer in the morning. Ms. Brady stated that her name was Shelly Brady and not Susie Peck. The NCO employee responded by saying, "Ok Susie" and terminated the call.

16.     On or about March 9, 2009 at approximately 8:29 a.m., a NCO employee telephoned Ms. Brady at her residence and asked to speak with a person named Susie Peck. Ms. Brady responded by asking the NCO employee for her name and whether she was calling from a collection agency. The NCO employee stated that her name was Carlinda and that she was calling from a collection agency. Ms. Brady asked the NCO employee for the address of her company. The NCO employee refused to give her company address. The NCO again asked Ms. Brady whether she was Susie Peck. Ms. Brady responded by stating that she was going to contact a lawyer. The NCO employee then transferred Ms. Brady to another NCO employee who

4

stated that his name was Bindley and that he was a supervisor at NCO. The NCO supervisor asked Ms. Brady if she was filing bankruptcy and he asked for the name of Ms. Brady's bankruptcy lawyer. Ms. Brady stated that she was not filing bankruptcy. The NCO supervisor stated that NCO was calling to collect a delinquent debt owed by Susie Peck to J.C Penny. Ms. Brady again asked for NCO's address. The NCO supervisor responded that the company address was 507 Prudential Road, Horsham, Pennsylvania 19044. Ms. Brady again stated that she was not Susie Peck, that NCO had been harassing her for days. and that she was going to contact an attorney. The NCO supervisor that NCO already had a stack of lawsuits filed against it and that NCO would just add Ms. Brady's lawsuit to the pile.

17. Ms. Brady did not and does not reside with Ms. Peck.

18. Ms. Brady did not and does not share telephone service with Ms. Peck.

19. Ms. Brady was not responsible for paying the debt NCO was attempting to collect from Ms. Peck.

20. A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

21. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

22. NCO wrongfully communicated to Ms. Brady that NCO is a debt collector and that NCO was attempting to collect a debt from Ms. Peck, violating 15 U.S.C. § 1692b.

23. When NCO communicated with Ms. Brady, NCO already knew Ms. Peck's place of abode.

5

24. When NCO communicated with Ms. Brady, NCO already knew Ms. Peck's telephone number at her place of abode.

25. When NCO communicated with Ms. Brady, NCO already knew Ms. Peck's place of employment.

26. NCO wrongfully communicated with Ms. Brady for a purpose *other than* to acquire location information. Namely, NCO wrongfully turned Ms. Brady into a *de facto* debt collector for NCO by attempting to cause Ms. Brady to deliver a message to Ms. Peck in an effort to collect at debt.

27. The FDCPA states that a debt collector seeking location information from a person shall "not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person know has correct or complete location information." 15 U.S.C. § 1692b(3).

28. The FDCPA states that "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" is a violation of the FDCPA. 15 U.S.C. § 1692d(5).

29. NCO and its employees wrongfully communicated more than once with Ms. Brady regarding Ms. Peck.

30. NCO harassed Ms. Brady in connection with NCO's efforts to collect a debt.

31. NCO annoyed Ms. Brady in connection with NCO's efforts to collect a debt.

32. The natural consequence of NCO's conduct was to harass, annoy and embarrass Ms. Brady.

33. NCO used false representations or deceptive means to collect or attempt to collect a debt

34. It was unfair and unconscionable for NCO to repeatedly communicate with Ms. Brady for a purpose *other than* to acquire location information.

35. The alleged debt which NCO was attempting to collect was incurred for personal, family and household purposes.

36. The unlawful debt collection methods, acts and practices of NCO and its employees were willful.

37. NCO and its employees wilfully violated the FDCPA and MCPA.

38. As an actual and proximate result of the acts and omissions of NCO and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, and suffering for which she should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1– Fair Debt Collection Practices Act

39. Plaintiff incorporates the foregoing paragraphs by reference.

40. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

    a) Defendant violated 15 U.S.C. § 1692b;

    b) Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress and abuse plaintiff in connection with the collection of a debt;

7

c) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

d) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

d) A declaration that defendant's practices violate the FDCPA; and

e) Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

41. Plaintiff incorporates the foregoing paragraphs by reference.

42. Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt, by repeatedly causing a telephone to ring and/or by repeatedly engaging a person in telephone conversation; and

b) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b)   Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)   Statutory damages pursuant to M.C.L. § 339.916(2); and

d)   Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: March 26, 2009

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com